UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN E. BRENTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:08-cv-1514-WTL-DML |
| ) | |
| MICHAEL ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Kevin Elaine Brents appeals the final determination of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). The Court rules as follows.

*Procedural History*

Brents filed her application for DIB on September 7, 2004, alleging disability since September 15, 2003. She claims disability due to fibromyalgia, costochondritis, depression, and anxiety. Her application was initially denied by an administrative law judge in a decision dated August 25, 2006. That decision was remanded by the Appeals Council with instructions to the ALJ to give further consideration to Brents' mental impairments and residual functional capacity. Following a hearing, the ALJ issued a second decision dated May 5, 2008, again finding that Brents was not under a disability as defined by the Social Security Act ("the Act"). That decision became the final decision of the Commissioner when the Appeals Council denied Brents' request for review on August 8, 2008.

Brents filed this action for judicial review of the Commissioner's final decision on

November 10, 2008, pursuant to 42 U.S.C. § 405(g).  Although she was represented by counsel before the ALJ, she appears before this court *pro se*.  She asserts that the ALJ was in error and contends in both her complaint and her brief that she is being unfairly penalized for her doctor's incomplete medical records.   In addition, a few weeks following the filing of her brief in this case, Brents received a "Medical Source Statement" dated April 15, 2009, from her current treating physician, Dr. Elizabeth Cobbs.  Brents has filed that medical statement with the Court and it is now a part of the record, at least for the purpose of assessing whether the Court should issue a "sentence six" remand for consideration of this additional evidence.  *See* 42 U.S.C. § 405(g).

### *Standard for DIB Determination and Judicial Review*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration has implemented a "five-step sequential evaluation process" for determining disability.  20 C.F.R. §§ 404.1520 and 416.924.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id*.  At the first step, if the claimant is currently engaged in substantial gainful activity, then she is not disabled.  At the second step, if the claimant's impairments are not severe, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.924(c).  Third, if the

claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), then the claimant is deemed disabled. The Listings are medical conditions defined by criteria that the Administration has predetermined to be disabling. 20 C.F.R. § 404.1525.  If the claimant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. §§ 404.1545 and 416.945.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  Fifth, considering the claimant's age, work experience, and education along with her RFC, she will be determined to be not disabled if she can perform any other work in the relevant economy.

The burden rests on the claimant to establish steps one through four.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir.2004).  The burden then shifts to the Commissioner at step five to establish that there are jobs that the claimant can perform in the national economy.  *Id*.

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.2000).

To determine if substantial evidence exists, the Court reviews the entire administrative

record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. *Id*. Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir.2003).

### *ALJ's Decision & Analysis*

In this case, the ALJ found that Brents was not employed and had not engaged in gainful activity since September 15, 2003. She also found that Brents suffered from three severe impairments: (1) fibromyalgia; (2) obesity; and, (3) depression. However, the ALJ did not find that the record supported a finding that Brents' vision problems, her costochondritis or her alleged cardiac impairment constituted a severe impairment pursuant to 20 C.F.R. § 404.1520(c). It appeared evident to the ALJ from the medical records that Brents' cataract surgery was a success. Further, the testimony of the consulting physician, Dr. Paul Boyce, was that costochondritis is usually a temporary condition that resolves itself over the course of time and that the lack of any reference to it in Brents' medical records subsequent to June 2006 suggested that it had, in fact, resolved. Finally, the ALJ noted that there was no evidence to support any cardiac impairment, as x-rays and a stress test were negative.

It is difficult for the Court to determine exactly what Brents is challenging in this judicial review proceeding, as the document she submits as her brief asks many rhetorical questions, but raises few legal issues. However, she does assert that there is a "discrepancy" in the ALJ's decision because even though her cataract surgery was successful, she still has to wear glasses. This, obviously, is insufficient to call into question the ALJ's determination that Brents' vision problem is not a severe impairment. As for the costochondritis, Brents simply offers an unsupported contention that it must have been a mistaken diagnosis because it often takes a

4

number of years for a physician to pinpoint a fibromyalgia diagnosis.  Even if true, that takes nothing away from the ALJ's supported conclusion that costochondritis was not one of Brents' severe impairments.  Nor does Brents offer anything that would take away from the objective findings from her x-rays and stress test, which were employed by her doctors to assist with any cardiac diagnosis.  Her report of experiencing some pain during the stress test does not overcome the objective findings of a normal result.

The ALJ determined at step three that Brents does not have an impairment or combination of impairments which meet or equal one of the listed impairments in Subpart P, appendix 1, as required by 20 C.F.R. § 404.1520(d).  As requested by the Appeals Council in its remand order, the ALJ focused on Brents' mental impairments and her RFC.  She assessed whether the record supported a conclusion that Brents' mental impairment equaled the listing 12.04 for "affective disorders," and concluded that it did not.

In order for a claimant's depression to be adjudged severe enough to be disabling, there must be a determination that she meets the requirements under Listing 12.04 paragraph A and either paragraph B or paragraph C.  The ALJ focused on what she saw as a lack of evidence to support a conclusion that Brents satisfied Paragraph B, which  requires the claimant to show that her depression is persistent and results in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  The test reports and notes and comments from the medical professionals of record supported only a mild to moderate effect on Brents' social and cognitive functioning, including concentration, persistence and pace.  She had no medically recorded episodes of extended decompensation, and her testimony with regard to daily activities, while admittedly

limited, still included an ability to do her own laundry, make her bed, cook a meal, read books and watch television.

The ALJ also considered whether the requirements of paragraph C were met. Paragraph C requires a showing of a two-year or more medically documented history of an inability to do basic work activities and at least one of the following: repeated episodes of decompensation; predictable decompensation upon minimal increase in mental demands; or a current one-year history of an inability to function outside a highly supportive living arrangement. Again, the ALJ found no medical evidence of past or predictable decompensation and a lack of evidence that Brents could not function outside a highly supportive living arrangement. Brents has offered nothing in this review which calls the ALJ's conclusions into question.

With regard to Brents' physical impairments, in her decision of May 5, 2008, the ALJ mentions that there is no Listing for fibromyalgia or obesity, but that she considered the effects of both in determining whether Brents' impairments medically equaled a listed impairment and concluded that they did not. The ALJ provided more detail with regard to that conclusion in her initial decision of August 25, 2006, where she described the lack of evidence to support the necessary finding that Brents' physical impairments involve her organs or body systems in order to qualify under the Listings for a connective tissue disease. Brents has not pointed to evidence suggesting that the criteria of any Listing are satisfied or medically equaled, a burden which she bears. *See Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir.1999).

Having concluded that Brents did not have an impairment or combination of impairments which met or equaled a listed impairment, the ALJ moved on to consider Brents' RFC. She reached the following conclusion:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b): She can occasionally lift, carry, push and pull twenty pounds, and frequently ten pounds.  She can sit for a total of six hours in an eight-hour work day and stand and/or walk for a total of six hours in an eight-hour work day.  She can occasionally climb stairs and ramps, balance, stoop, crouch, kneel and crawl.  The claimant cannot perform work involving ladders, ropes, and scaffolding; nor can she perform work involving heights or moving machinery.  She cannot perform work which requires a commercial driver's license.  Lastly, she can perform work involving only simple, repetitive tasks; she cannot perform work which requires more than minimal contact with the public and superficial contact with co-workers.

In reaching this conclusion, the ALJ relied primarily on the testimony of the consulting internist, Dr. Boyce, and the consulting clinical psychologist, Dr. Pitcher, and her RFC determination is consistent with the opinions of those physicians.  The ALJ explained that she (understandably) discounted an RFC form completed by Brents' treating physician, Dr. Cynthia Reed, because Dr. Reed made it clear that in completing the form she was simply setting forth Brents' limitations as Brents herself described them, rather than expressing her own opinion based upon her medical expertise.  The ALJ also pointed out that there was a paucity of support for any functional limitations or inability to work attributable to the claimant's fibromyalgia in Dr. Reed's notes.  Thus, the ALJ's RFC determination was supported by substantial evidence of record.

In the final section of her decision, the ALJ considered Brents' age, education, work experience and, based upon the testimony of a vocational expert, determined that there were jobs that existed in significant numbers in the regional economy which Brents could perform given her RFC.  Specifically, the vocational expert's testimony, which was consistent with the information contained in the Dictionary of Occupational Titles, supported the ALJ's finding that Brents could perform the requirements of occupations such as assembler, machine tender and food service worker.  While it is difficult to discern the specific challenges that Brents wishes to raise, it

appears that she disagrees with this finding by the ALJ because she believes the jobs in question would require her to work with other people, something that she believes she is unable to do. *See* Brents Brief at 4 ("Again may I ask, will I be the only one doing assembly?  Assemble what, with the medication I'm on. . . .  Again may I ask, will I be the only person being a machine tender and a food service worker?  I would be the only employee?").  The Court understands that the ALJ's decision may have left Brents with a number of questions; however, the questions she poses are not relevant to the inquiry here, namely whether the ALJ's determination is supported by substantial evidence or whether she applied an incorrect legal standard.  Given the testimony of the medical experts at the hearing regarding Brents' abilities, coupled with the vocational expert's testimony regarding how those abilities equate with the ability to perform the jobs in question, the Court must conclude that there is substantial evidence to support the ALJ's decision.

Finally, there is the issue of the additional report prepared by Brents' new treating physician, Dr. Cobbs which was submitted by Brents to this Court in support of her case on July 30, 2009, well after both parties had submitted their briefs.  Dr. Cobbs' "Medical Source Statement" is dated April 15, 2009, and relates to Brents' fibromyalgia and tendinitis.  Dr. Cobbs describes her patient as having widespread muscle aching and pain, with reduced motion in both shoulders, impaired sleep, tenderness, and crepitus in her knees.  She also placed a check mark beside the form's notation of "trigger points."  The doctor states that Brents has side effects of dizziness and drowsiness from her medication and that she is severely limited in her ability to deal with work stress.  Dr. Cobbs goes on to complete the form by checking the most severe limitations on nearly every criteria assessing the degree to which Brents can engage in specific activities such as sitting, walking or standing without alternating postures or requiring rest and her ability to balance, stoop, lift, flex and use each of her hands.  She concludes by indicating that the

patient's condition existed and persisted with such restrictions since at least 2005.

The Court interprets Brents' submission of this record as a request for a "sentence six" remand for new evidence, pursuant to which the Court can remand a matter to the Commissioner in order for new evidence to be considered upon a showing that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "New" evidence is that which was "not in existence or available to the claimant at the time of the administrative proceeding." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir.1997). The evidence is material "if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir.2005).

There is no question that the report from Dr. Cobbs is "new," as it was not created until well after the ALJ issued her decision. Since the report was prepared by a new treating physician and was not available at the time of the previous hearing, there would appear to be good cause for why it was not presented earlier. The question, therefore, is whether the report is "material."

Unlike the RFC which was completed by Dr. Reed with the caveat that she was setting forth the limitations as reported to her by her patient, this statement contains no indication that the form was completed to reflect only Brents' subjective complaints. However, the statement also provides no indication as to any objective medical findings which underpin Dr. Cobbs' conclusions other than a measurement of the limitation in Brents' shoulder rotation. Further, Dr. Cobbs indicates that Brents has been seen at the medical clinic every two to three months for many years, but does not indicate if in reaching her medical conclusions she is relying on past clinic records in addition to her recent exposure to Brents as her new treating physician. To the extent that Dr. Cobbs is relying on her own personal examination of Brents with regard to her

current (i.e. April 2009) medical condition, her opinion is not material to the question of Brents' condition at the relevant time–that is, the time between her alleged onset date of September 2003 and the date of the ALJ's decision, May 5, 2008. *See Schmidt*, 395 F.3d at 742 ("[T]his court has held that medical records 'postdating the hearing' and that 'speak only to [the applicant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration' do not meet the standard for new and material evidence.") (citations omitted). As for Dr. Cobb's notation that Brents' condition has existed and persisted with the noted restrictions since 2005, that notation could only be based on either a statement made by Brents to Dr. Cobbs or the doctor's review of previous clinic records–specifically Dr. Reed's notes and reports–all of which were submitted to and reviewed by the ALJ and medical expert Dr. Boyce. Therefore, the Court determines that this new report by Dr. Cobbs does not merit a sentence six remand.

## *Conclusion*

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence and Brents has not demonstrated any legal error by the ALJ. The Court further finds that the new evidence submitted by Brents does not warrant a sentence six remand. Accordingly, the Commissioner's decision must be, and is, **AFFIRMED**.

SO ORDERED: 03/25/2010

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copy by United States Mail to:             Copy via electronic notification to:

Kevin Elaine Brents                        Thomas E. Kieper
3018 Guilford Ave.                         Assistant U.S. Attorney
Indianapolis, IN 46205                     tom.kieper@usdoj.gov